IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DANNY K. PEARSALL #292-835 | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. GLR-12-948 |
| BARBARA NEWTON | * | |
| LOIS CUTTER, R.N. | | |
| CORIZON, INC. | * | |
| Defendants | * | |

## MEMORANDUM

Danny K. Pearsall ("Pearsall"), a Maryland Division of Correction ("DOC") prisoner housed at Western Correctional Institution ("WCI"), filed a civil rights Complaint under 42 U.S.C. § 1983 against Corizon Medical Services ("Corizon"), Barbara Newton, an agency contract operations manager for Corizon, and Corizon employee Lois Cutter ("Cutter"), a registered nurse. Pearsall, who is self-represented, seeks money damages and alleges he was denied prompt and appropriate medical care by Cutter regarding injuries received following an altercation with other prisoners. Defendants' previously-filed Motion for Summary Judgment (ECF No. 7) was granted in part as to Defendants Newton and Corizon, Inc., and denied as to Defendant Cutter, and supplemental jurisdiction was denied as to Pearsall's state tort negligence claim, which was dismissed without prejudice. ECF Nos. 11 and 12. Now pending is a supplemental Motion to Dismiss, or in the Alternative for Summary Judgment, filed on behalf of Cutter (ECF Nos. 7 and 13) and Pearsall's opposition thereto. ECF No. 15. A hearing is not necessary to resolve the pending dispositive motion. See Local Rule 105.6 (D. Md. 2011).

**Background**

Pearsall states that around 9:00 p.m. on February 1, 2011, he was assaulted by fellow prisoners. He was taken to the WCI medical unit and reported to Cutter that he believed his jaw was broken, he was in severe pain, constantly spitting out blood, and unable to talk, eat or stop the bleeding. He states Cutter performed an examination, then released him back to his cell without pain medication and without contacting the on-call physician to request emergency treatment at an area hospital. The next day, corrections staff escorted him back to the medical unit where Dr. Joubert authorized his immediate transportation to University of Maryland Medical Center ("UMMC"). There, Pearsall underwent surgery to repair a broken jaw and fractured teeth. Pearsall claims, both in his unverified Complaint and opposition responses, that Cutter's inaction amounted to deliberate indifference under the Eighth Amendment. ECF No. 1 at 4-6; see also ECF Nos.10 and 15. Pearsall provides an Administrative Remedy Procedure ("ARP") response from WCI's Warden finding that Cutter violated protocol by failing to contact the on-call physician or dentist "to describe her findings and obtain guidance in how to proceed in the immediate post-fight period." The Warden noted that Cutter "has been counseled by CMS. The dental vendor provided training to CMS nursing staff as a direct result of your case." ECF No. 1 at 9.

Counsel provides a February 1, 2011, Nurse Sick Call report prepared by Cutter indicating she provided Pearsall with 200 mg Motrin for pain, applied a cold compress to his jaw, provided saline to rinse his mouth, and issued a referral for dental evaluation and treatment at a later date. ECF No. 7, Ex. B at 1. Counsel also provides additional medical records concerning subsequent treatment provided by other Corizon staff as well as UMMC medical personnel. Id., Exs. C and D. Cutter has submitted an affidavit indicating that Pearsall was

2

brought to the medical unit at 10:36 p.m. Pearsall was alert and oriented and had some bleeding from the mouth and several loose teeth. Cutter indicates Pearsall stated it did not hurt very much, but she assumed that he was still "pumped up from the fight" and might experience more pain later. Cutter found Pearsall's jaw line in alignment and felt no movement of the bones. At that time, Pearsall was able to open his mouth without difficulty and could talk appropriately. Cutter cleansed his mouth with saline and gauze and gave him two 200 mg tablets of Motrin plus supplies of saline, gauze, an ice pack for swelling, and several additional tablets of 200 mg Motrin to take as needed. Cutter told Pearsall to call medical at any time that evening if he had any problems, and placed a consultation request so the dentist could see him as soon as possible the next day. Cutter avers that she did not call or page the doctor on call because her clinical assessment led her to conclude Pearsall had no other problems besides the loosened teeth. ECF No. 13, Ex. B, Affidavit of Lois Cutter, R.N.

### Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts

3

showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to...the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted) (quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986)).

A.     **Eighth Amendment Standard**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. Gregg v. Georgia, 428 U.S. 153, 173 (1976). To state an Eighth Amendment claim for denial of medical care, Pearsall must demonstrate that Cutter's actions (or her failure to act) amounted to deliberate indifference to a serious medical need. See Estelle v. Gamble, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, Pearsall was suffering from a serious medical need and that, subjectively, Cutter was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. See Farmer v. Brennan, 511 U.S. 825, 837 (1994).

As noted above, the medical condition at issue must be serious. See Hudson v. McMillian, 503 U.S. 1, 9 (1992) (no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires "subjective recklessness" in the face of the

serious medical condition. Farmer, 511 U.S. at 839– 40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." Rich v. Bruce, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 105 (4th Cir. 1995), quoting Farmer, 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." Farmer, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. See Brown v. Harris, 240 F.3d 383 (4th Cir. 2001), citing Liebe v. Norton, 157 F.3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken). Further, disagreements between a prisoner and health care staff over the prisoner's proper care do not state a § 1983 claim unless exceptional circumstances are alleged. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

It appears from the uncontroverted record and Cutter's affidavit that neither she nor Pearsall realized at the time the severity of Pearsall's injuries. Cutter was not deliberately indifferent to Pearsall's medical needs; she simply failed to realize that emergency care beyond referral to the dental department was needed. Nothing suggests that Pearsall reported back to the medical unit during the rest of Cutter's shift or during the early morning hours following his injury. By morning, Pearsall could not open his mouth, he was experiencing severe pain, and the full extent of Pearsall's injuries was apparent. An x-ray confirmed that his jaw was broken, and

Pearsall was transported to the hospital the following day, where his jaw was surgically wired on February 4, 2011.[1]  ECF No. 7, Ex. B.

Defendant Cutter provided basic medical services based on her assessment that Pearsall's injuries involved minor cuts and loosened teeth.  She was not deliberately indifferent to his need for medical attention; she simply did not realize the amount of damage later revealed.  An Eighth Amendment violation is not found on the facts set forth in this case.  See e.g. Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998) (negligence in misdiagnosis of pituitary tumor not sufficient for Eight Amendment claim).  Accordingly, Cutter shall be granted summary judgment by way of a separate Order.

October 1, 2012                                                             /s/
                                                                    _____
                                                                    George L. Russell, III
                                                                    United States District Judge

---

[1] Clearly Pearsall's injuries were not so threatening that emergency surgery was immediately required.